IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01296-KLM

KENNETH MORRIS,

      Plaintiff,

v.

DAVID BERKEBILE, in His Individual Capacity,
TARA HALL, in Her Individual Capacity,
FRANK CORDOVA, in His Individual and Official Capacity, and
DAVID ALLRED, in His individual Capacity,

      Defendants.

_____

## ORDER

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#40][1] (the

"Motion").  Plaintiff, who is proceeding pro se,[2] filed a Response [#44] in opposition to the

Motion.  Defendants did not file a reply, and the Motion is thus ripe for review.  Having

reviewed the entire case file and being sufficiently advised, the Motion [#40] is **GRANTED**

**in part and DENIED in part.**

_____

[1]  "[#40]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Order.

[2]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## I.  Summary of the Case

Plaintiff is presently an inmate at the United States Penitentiary - Administrative Maximum in Florence, Colorado ("ADX Florence").  *Third Am. Compl.* [#36] at 2.  Plaintiff brings this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[3], to address two instances where he claims he was denied proper medical care while incarcerated there.  *Id.* at 4.

### A.    Medical Care Following a Dental Procedure

Plaintiff's first claim relates to medical care he received after a dental procedure. None of Plaintiff's claims before this Court[4] relate to the procedure itself, but review of the underlying dental procedure is helpful to understand the context of this case.  In June of 2012, Plaintiff was having problems with tinnitus[5].  *Third Am. Compl.* [#36] at 9.  An ADX Florence medical practitioner examined Plaintiff and determined that one of Plaintiff's wisdom teeth ("tooth 16") had grown the wrong way in his mouth, and that the tooth could be the cause of tinnitus.  *Id.* at 9.  Plaintiff was later examined by a dentist, who determined that the misplaced wisdom tooth was likely not a cause of the tinnitus.  *Id.*  The dentist recommended against removing the tooth, and instead suggested that Plaintiff needed to see an ear, nose, and throat (ENT) specialist to attempt to find the cause of the tinnitus.

---

[3]  In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court recognized a cause of action for money damages and injunctive relief against federal officials acting under color of their authority for violations of an individual's constitutional rights. 403 U.S. at 395-97.  *Bivens* only authorizes suit against federal officials in their individual capacities.  *Smith v. United States*, 561 F.3d 1090, 1093 (10th Cir. 2009).

[4]  Plaintiff has filed a separate tort claim related to the events surrounding the dental procedure itself.  *Third Am. Compl.* [#36] at 9.

[5]  Tinnitus is a sensation of ringing in the ears.  *See Oxford English Dictionary* (2d ed. 1989).

*Id.*

Before Plaintiff was approved to see an ENT specialist, he began experiencing extreme pain around another wisdom tooth ("tooth 32"). *Id.* A different ADX Florence dentist examined Plaintiff and recommended that Plaintiff have tooth 32 removed by a non-ADX Florence dentist due to the complexity of the tooth removal. *Id.*

An ADX Florence committee approved the dentist's recommendation, and on August 27, 2013, Plaintiff underwent surgery to remove tooth 32. *Id.* at 11. When Plaintiff arrived back at ADX Florence and the effects of the anesthesia wore off, Plaintiff discovered that both tooth 32 and tooth 16 had been removed. *Id.*

Plaintiff's claims relate to the medical care he received after this procedure. Plaintiff alleges that the extraction of tooth 16 resulted in the puncture of his sinus. *Id.* at 5. Due to the puncture, Plaintiff alleges he was in "unbearable" pain, and a combination of blood and "pungent green puss" began constantly running out of his left nostril. *Id.* at 12. Plaintiff attempted to make contact with various prison doctors and officials with the goal of being referred to an ENT specialist, the person he believed would be able to diagnose and fix his condition. *Id.* at 17. Plaintiff alleges that Defendants ignored his medical condition and caused him to endure unnecessary pain. *See generally Third Am. Compl.* [#36] at 9-26. While the bleeding did eventually stop, Plaintiff alleges that dried puss formed a blockage that prevented him from breathing through his nose. *Id.* at 15.

Plaintiff alleges that he reached out to various prison officials and doctors for help. Plaintiff was prescribed antibiotics by Dr. Roberts,[6] an ADX Florence dentist, on three

---

[6] Dr. Roberts is not a party to this case.

separate occasions, and he was once given paid medication by an unnamed night-shift physician assistant.  *Id.* at 13, 16.  While he was satisfied with the care he received from some prison medical staff, Plaintiff alleges that the four Defendants in this case, through action and inaction, caused delays in medical treatment that constitute violations of the Eighth Amendment.  For the sake of clarity, the Court addresses the involvement of each defendant separately.

Defendant David Allred ("Allred") is a Clinical Director at ADX Florence.  *Id.* at 1.  Plaintiff alleges that Defendant Allred was aware of Plaintiff's medical condition, and that he delayed proper medical attention to Plaintiff.  *See generally Third Am. Compl.* [#36] at 9-26.  Plaintiff contends that Defendant Allred had knowledge of Plaintiff's condition in several ways.  *Id.*  Immediately after realizing the extent of his injury, Plaintiff sent daily requests to be examined to Defendant Allred.  *Id.* at 12.  Defendant Allred never responded to these requests.  *Id.*  While Plaintiff was unable to make contact with Defendant Allred, he was examined by Dr. Roberts, who informed Plaintiff that the condition was not a dental issue, but a medical one.  *Id.* at 13.  Dr. Roberts informed Plaintiff that he had contacted Defendant Allred about Plaintiff's condition.  *Id.*  Plaintiff alleges that Defendant Allred did not respond to his complaints until February 2014, five months after the botched surgery.  *Id.* at 14.  Plaintiff pled with Defendant Allred to refer him to an ENT specialist, but Defendant Allred was steadfast in his belief that a consultation with an ENT specialist was unnecessary.  *Id.* at 17.  Defendant Allred suggested that Plaintiff should continue to wait and see if the sinus healed itself.  *Id.*

Defendant Frank Cordova ("Cordova") is an Assistant Medical Administrator at ADX Florence.  *Id.* at 1.  Defendant Cordova is Defendant Allred's supervisor.  *Id.* at 19-20.

Plaintiff alleges that Defendant Cordova had read the complaints that Plaintiff made to Defendant Allred, but took no action until October 2013, two months after the botched surgery. *Id.* at 25. Plaintiff requested that Defendant Cordova provide him with a carticosteroid nose spray that could help his sinus heal, but Defendant Cordova denied the request. *Id.* at 15. Defendant Cordova spoke with Plaintiff and informed him that even though he had the ability to order medications, he would not get involved with the "actual nuts and bolts of prescribing things." *Id.* at 16. At the end of the conversation, Defendant Cordova assured Plaintiff that he would talk with Defendant Allred about Plaintiff's situation. *Id.* It is unclear whether Defendant Cordova did in fact speak to Allred. Defendant Cordova did eventually prescribe Plaintiff a generic, non-medicated saline spray. *Id.* at 19. Plaintiff had no further interactions with Defendant Cordova.

Defendant Tara Hall ("Hall") is the Associate Warden at ADX Florence. *Id.* at 20. Defendant David Berkebile ("Berkebile") is the Warden at ADX Florence. *Id.* at 21. Plaintiff alleges similar facts regarding the involvement of Defendants Berkebile and Hall. Plaintiff began an official grievance process in November 2013. *Id.* at 17. Defendant Hall and Defendant Berkebile denied Plaintiff's grievance. *Id.* Defendants Berkebile and Hall both had an opportunity to speak with Plaintiff in person. *Id.* Both Defendants Berkebile and Hall characterized Plaintiff's plight as "unacceptable" when he explained what he had been going through. *Id.* Defendant Berkebile stated that he understood how "awful" and "miserable" Plaintiff's situation was because Defendant Berkebile had once dealt with a sinus infection himself. *Id.*

Plaintiff eventually underwent surgery to correct the punctured sinus on July 21, 2014, ten months after the botched surgery. *Motion* [#40] at 3.

**B.** **Access to Hepatitis C Treatment**

Plaintiff's second claim relates to treatment for hepatitis C.[7]  Plaintiff was diagnosed with hepatitis C in 2009.  *Id.* at 27.  In October 2012, Plaintiff's chronic care doctor informed him that a diagnostic test indicated that he needed a liver biopsy.  *Id.*  Plaintiff alleges that a regional board allocated funding to ADX Florence for the biopsy, but, at the direction of Defendant Allred, the biopsy was never performed.  *Id.* at 28.

Plaintiff alleges that Defendant Allred informed him that he denied Plaintiff's liver biopsy because "the budget didn't allow for unnecessary procedures" and Plaintiff was scheduled for release within a couple of years.  *Id.*  Defendant Allred acknowledged that he was unable to determine the severity of Plaintiff's condition without a liver biopsy.  *Id.*  Plaintiff alleges that without the results of a biopsy, no hepatitis C treatment will be authorized.  *Id.* at 30.

Plaintiff alleges that Defendant Cordova failed to act and reverse Defendant Allred's decision to deny the liver biopsy.  *Id.* at 31.  Plaintiff alleges that Defendant Cordova was aware of Plaintiff's need for a biopsy in two ways.  First, Defendant Cordova is a member of the board that approved the funding for the liver biopsy.  *Id.* at 32.  Second, Plaintiff spoke with Defendant Cordova about Defendant Allred's denial while Defendant Cordova walked past his cell, and Defendant Cordova told Plaintiff to be patient.  *Id.*

Plaintiff alleges that Defendant Berkebile and Defendant Hall failed to act in this situation as well.  Plaintiff went through the prison grievance process at the prison several

---

[7] Hepatitis C is a form of viral hepatitis that is typically spread by contaminated blood products and which can result in chronic inflammation, cirrhosis, and primary cancer of the liver.  *See Oxford English Dictionary* (3d ed. 2012).

times, and he was always assured by Defendant Berkebile and Defendant Hall that the biopsy would occur. *Id.* at 34. Additionally, Plaintiff wrote four requests to both Defendant Berkebile and Defendant Hall making his dissatisfaction with his medical care known. *Id.*

As a result of these allegations, Plaintiff asserts two claims. *Id.* at 37. In both claims, he alleges Eighth Amendment violations against all Defendants in their personal capacities, and Defendant Cordova in his official capacity. Plaintiff seeks the following relief: (1) injunctive relief; (2) punitive damages; and (3) compensatory damages. *Id.* Defendants seek full dismissal of Plaintiff's lawsuit in the Motion [#40].

## II. Standard of Review

### A.   Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual

attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B.    Federal Rule of Civil Procedure 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the

plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

### A.    Subject Matter Jurisdiction

Defendants assert that claims against Defendant Cordova should be dismissed under Rule 12(b)(1) because Defendant Cordova is entitled to absolute immunity.  *Motion* [#40] at 10.

Title 42 U.S.C. § 233(a) "makes the United States the exclusive Defendant for injuries that employees of the Public Health Service cause while acting within the scope of their employment."  *Lurch v. United States*, 719 F.2d 333, 340 n.10 (10th Cir. 1983).

Plaintiff does not assert that Defendant Cordova is not a Public Health Service employee. In order to make findings regarding disputed jurisdictional facts, the Court has wide discretion to allow affidavits. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)**.**

In an affidavit, Defendant Cordova states that he is a commissioned officer with the Public Health Service. *Decl. of Cordova* [#40-1] ¶1. As a Public Health Service employee, Defendant Cordova is entitled to absolute immunity from Plaintiff's constitutional claims. *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) ("Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct.").

Accordingly the *Motion* [#40] is **granted** with respect to claims against Defendant Cordova, and these claims are **dismissed without prejudice**. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

## B.   Qualified Immunity

Defendants Allred, Berkebile, and Hall assert qualified immunity from Plaintiff's claims against them, *Motion* [#40] at 11, and thus the Court first examines whether Plaintiff's Third Amended Complaint would survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) ("Since the [Defendant] raised the defense of qualified immunity in its motion to

dismiss, we first examine whether [Plaintiffs] asserted a violation of federal law in their complaint.").

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982) ("[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818; see also *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate). The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm." *Id.* at 807. Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

## C.    Claim One: Eighth Amendment

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments that "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because prisoners "must rely on prison authorities to

treat [their] medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court

has held that "deliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at

104 (quoting *Gregg*, 428 U.S. at 173).  The test for deliberate indifference is both objective

and subjective: a prisoner must establish that he was deprived of a medical need that is,

objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that

the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's]

health or safety." *Id.* at 837.

In order to satisfy the subjective prong of the test for deliberate indifference, a

plaintiff must allege that each defendant "kn[ew] of and disregard[ed] an excessive risk to

inmate health and safety." *Farmer*, 511 U.S. at 837.  A defendant knows of and disregards

an excessive risk to a prisoner's health or safety when he is both "aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists," and he

actually draws that inference.  *Id.*  The subjective component of an Eighth Amendment

claim is met if the plaintiff demonstrates a defendant "knew [the plaintiff] faced a substantial

risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."

*Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citations omitted).  Importantly,

"it is obduracy and wantonness, not inadvertence or error in good faith, that characterize

the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*,

475 U.S. 312, 319 (1986).  Accordingly, a prisoner does not have a valid claim of deliberate

indifference simply because he was denied "a particular course of treatment" that he

desired.  *Callahan v. Poppell*, 471 F.3d at 1160.  "[A] prison doctor remains free to exercise

his or her independent professional judgment," *Id.* (citing *Dulany v. Carnahan*, 132 F.3d

1234, 1240 (8th Cir. 1997)), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Defendants do not address the objective prong of Plaintiff's claim. Instead, they argue that Plaintiff's claims fail for the following reasons: (1) Defendant Allred's participation amounted to a difference of opinion regarding medical care, or negligence at worst, and not a constitutional violation; and (2) failure to allege subjective awareness in regards to Defendants Berkebile and Hall. *Motion* [#40] at 18-20.

### 1.    Defendant Allred

Plaintiff alleges that Defendant Allred's failure to act upon receiving information about Plaintiff's condition from Plaintiff and from Dr. Roberts, an ADX Florence dentist, constitutes deliberate indifference. *Third Am. Compl.* [#36] at 18. Defendant Allred argues that Plaintiff did receive medical care, but he is dissatisfied with the dates and type of this treatment, and that even medical negligence does not rise to the level of deliberate indifference. *Motion* [#40] at 18. In addition, Defendant Allred contends that his decisions as to what type of medical treatment was necessary constitute the type of matters that fall within the scope of medical judgment. *Id.* at 17.

Plaintiff alleges that Defendant Allred's failure to respond to his requests for medical attention prevented him from receiving any medical care related to his punctured sinus. *See generally Third Am. Compl.* [#36]. However, Plaintiff's complaint details a number of instances where he did receive medical attention after the botched surgery. Plaintiff had consultations with a dentist, Dr. Roberts, and a "mid-level practitioner", named Osagie. *Id.*

at 13.   In addition, Plaintiff received pain medication, three antibiotic prescriptions, and saline nasal spray intended to help with his pain and infection.  *Id.* at 13, 16, 19.  Plaintiff's complaint alleges that he was not referred to an ENT specialist as he believed he needed to be, but the complaint does not allege a complete lack of medical attention.

Thus, Plaintiff has not alleged that he was denied all treatment, only that he was temporarily denied the specific type of treatment that he wanted.  The decision whether or not to refer a patient to a specialist is a "classic matter of medical judgment" and does not rise to the level of deliberate indifference.  *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).   "[A]bsent an extraordinary degree of neglect," where a doctor exercises his considered medical judgment not to consult a specialist, a plaintiff cannot satisfy the subjective component.  *Id.*

Plaintiff alleges that at the time Defendant Allred examined Plaintiff, bleeding from the punctured sinus had stopped, but evidence of infection was still present.  *Third Am. Compl.* [#36] at 15.   Plaintiff also alleges that he was prescribed antibiotics on three separate occasions in the six months after the surgery.  *Id.* at 16.  These allegations are insufficient to demonstrate that Defendant Allred acted with an extraordinary degree of neglect by choosing not to refer Plaintiff to a specialist.  Plaintiff presented Defendant Allred indications of infection, and he was given antibiotics, a commonly used tool in a battle against infection.  As such, the claims against Defendant Allred fail to demonstrate a violation of the Eighth Amendment.

Accordingly, Plaintiff's Claim One in regards to Defendant Allred is **dismissed with prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that

prejudice should attach to a dismissal when the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

### 2.    Defendants Berkebile and Hall

Defendants assert that Plaintiff's allegations do not demonstrate personal participation of Defendant Berkebile and Defendant Hall in the allegedly unconstitutional conduct. *Motion* [#40] at 23.   All *Bivens* claims require that liability be predicated on a violation traceable to a defendant-official's "own individual actions." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676).   To establish supervisor liability under § 1983 (and therefore *Bivens, see Pahls*, 718 F.3d at 1225), "it is not enough for a plaintiff merely to show a defendant was in charge of other . . . actors who actually committed the violation.   Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'"   *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citations omitted).

Plaintiff argues that Defendant Berkebile and Defendant Hall showed deliberate indifference in two ways: (1) as Warden and Associate Warden, they are responsible for the actions of those they supervise; and (2) Defendant Berkebile and Defendant Hall knew of Plaintiff's medical condition and failed to act. *Third Am. Compl.* [#36] at 17, 21.

In order to state a claim against Defendant Berkebile and Defendant Hall, Plaintiff must allege deliberate, intentional acts taken by them.   Plaintiff has not done so.   Plaintiff only alleges that Defendant Berkebile and Defendant Hall failed to act when they became aware that Plaintiff was not getting the medical attention he desired.   As supervisors, these allegations do not implicate Defendant Berkebile and Defendant Hall under *Bivens*. *Davis v. Ark. Valley Corr. Facility*, 99 F. App'x 838, 843 (10th Cir. 2004) ("Copying [the Warden]

with correspondence outlining his complaints about medical care, without more, does not sufficiently implicate Warden under § 1983."). Thus, Plaintiff has not alleged a cognizable claim against Defendants Berkebile or Hall.

Accordingly Plaintiff's Claim One in regards to Defendants Berkebile and Hall is **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

**D.     Claim Two: Eighth Amendment**

**1.     Defendant Allred**

Plaintiff claims that Defendant Allred prevented him from undergoing a liver biopsy after a test performed by a previous doctor determined that a liver biopsy was required. *Third Am. Compl.* [#36] at 27.  Plaintiff further contends that he cannot receive hepatitis C treatment without a liver biopsy demonstrating that treatment is necessary.  *Id.* at 28. Plaintiff alleges that he had symptoms related to untreated hepatitis C including stomach pain, fatigue, and insomnia.  *Id.*

The test for deliberate indifference is both objective and subjective: a prisoner must establish that he was deprived of a medical need that is, objectively, "sufficiently serious," and that the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's] health or safety."  *Farmer,* 511 U.S. at 834, 837 (1994).  Defendant Allred argues that Plaintiff's allegations fail both the objective and subjective prong of the deliberate indifference test.

**a.     Objective Component**

Defendant Allred argues that Plaintiff's claim related to hepatitis C treatments fails the objective prong of the deliberate indifference test because delay in medical care "only

-16-

constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). Defendant Allred contends that Plaintiff has failed to allege that the symptoms are related to untreated hepatitis C, and that the denied biopsy prevented him from receiving any treatment for hepatitis C. *Motion* [#40] at 21. The Court disagrees.

The 10th Circuit examined a case with remarkably similar facts in *Thomas v. Bruce*, 125 F. App'x 964 (10th Cir. 2005). Mr. Thomas, a prisoner with hepatitis C, alleged that a prison doctor determined that his liver-enzyme levels warranted a liver biopsy and treatment. *Id.* at 966. After the prison doctor determined that a biopsy and other treatment was necessary, Mr. Thomas was denied treatment by several other prison doctors. *Id.* at 967. The court found that deprivation of the biopsy and treatment that had been recommended by a physician was sufficiently serious to survive a motion to dismiss. *Id.*

In the instant case, Plaintiff has sufficiently alleged that a biopsy was required ("My [diagnostic result] was well above the threshold that the [Bureau of Prisons Treatment Manual] stipulates would require [the biopsy]", *Third Am. Compl.* [#36] at 30), but Defendant Allred did not allow him to undergo the procedure. Plaintiff's allegations that he will not receive hepatitis C treatment without the biopsy results are sufficient as well. "[T]he liver biopsy. . . is the key to the gate towards hepatitis C treatment." *Id.* at 29. "[Defendant Allred's] unwillingness to schedule me for the biopsy is essentially another way of refusing to give hepatitis C treatment to a sickened prisoner." *Id.* "As a response to my [grievance], the Central Office stated plainly that treatment would depend upon the biopsy results." *Id.* at 30.

Defendant Allred argues that even if the allegations are sufficient, the claim should

be dismissed because Plaintiff offers mere speculation that the lack of hepatitis C treatment has actually had any negative effects on his liver. *Motion* [#40] at 20-21. Defendant is correct in the assertion that Plaintiff is unable to allege that biopsy results or any other test shows that liver damage has occurred, however, without the results of a liver biopsy, Plaintiff is not in a position to allege that the lack of treatment has actually damaged his liver. Plaintiff, as a prisoner, requires authorization to undergo a liver biopsy to determine if his liver has been damaged by the delay in treatment. Plaintiff has been diagnosed with hepatis C, and he has alleged he shows several symptoms associated with failure to treat his hepatis C. *Third Am. Compl.* [#36] at 27-28. He is unable to do more to demonstrate that he needs hepatitis C treatment without a biopsy being authorized. The failure to authorize a biopsy is the subject of this claim. To hold that Plaintiff's claim should fail because he is unable to allege damage to his liver based on test results would deprive Plaintiff of the ability to ever have this matter addressed by the Court.

The Court finds that Plaintiff has alleged facts that establish that the objective prong of the deliberate indifference test is met.

### b.    Subjective Component

Defendant Allred's arguments that Plaintiff fails to properly allege facts to satisfy the subjective prong of the deliberate indifference test mirror his arguments related to the objective prong.

Defendant argues that Plaintiff cannot allege facts from which it can be plausibly inferred that his symptoms are caused or worsened by the delay in receiving the biopsy. As explained above, Plaintiff is unable to do so without the results of the biopsy. *Id.* at 21. Plaintiff's allegations that he has been diagnosed with hepatitis C and is demonstrating

symptoms associated with non-treatment of hepatitis C sufficiently allege that he needs hepatitis C treatment.

Defendant also contends that Plaintiff never alleges that he is not receiving any hepatitis C treatment at all, but Plaintiff's complaint clearly states "[hepatitis c] treatment would depend on the results [of a biopsy]". *Third Am. Compl.* [#36] at 30. This argument implies that Plaintiff is actually receiving some hepatitis C treatment, but believes that denial of a liver biopsy is nevertheless a violation of the Eighth Amendment. The Court notes that to the extent Defendant wished to offer evidence that Plaintiff is indeed receiving treatment for hepatitis C, he could have tendered an affidavit or other admissible evidence and sought to convert the Motion to a request for entry of summary judgment. *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986); Fed. R. Civ. P. 12(d) (If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgement under Rule 56. . .). Defendant has not done so. The Court declines to construe the lack of an allegation in the complaint that Plaintiff is receiving no hepatitis C treatment whatsoever as an allegation that he <u>is</u> receiving such treatment. Defendant has the responsibility to provide evidence of any such treatment.

The subjective component of an Eighth Amendment claim is met if the plaintiff demonstrates a defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159. Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley*, 475 U.S. at 319.

In *Thomas*, the court found that the subjective component was satisfied because the prison doctors did not provide hepatitis C treatment even though they had knowledge of hepatitis C risks, and knowledge that a physician had recommended care including a biopsy.  125 F. App'x at 967.

Plaintiff alleges that Allred was aware of the risks of untreated hepatitis C.  *Third Am. Compl.* [#36] at 29 ("I asked Allred if he considered hepatitis C to be a deadly disease. Allred replied that it all depends on the aggressive nature of the virus in my body.  I asked him to evaluate, if he would, how aggressive my strain of hepatitis C is.  He said he couldn't know that without the biopsy, but told me that the chances I would die before November 10, 2015 were low.").  The allegations clearly assert that Defendant Allred understands that in some cases hepatitis C can be deadly, and stated that he is unable to determine whether Plaintiff is at risk of serious harm or not without a biopsy.  Nevertheless, Plaintiff alleges that Defendant Allred prevented him from undergoing a biopsy.

Plaintiff's allegations satisfy the subjective prong of the deliberate indifference test.

### c.   Qualified Immunity

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position.  *Harlow*, 457 U.S. at 818; see also *Pearson,* 555 U.S. at 236 (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

Defendant failed to argue in any manner whatsoever that a constitutional violation,

if it occurred, was not clearly established.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Medina v. City & Cty. Of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

The Court finds that the alleged violation of the Eighth Amendment was clearly established.  In *Erickson v. Pardus*, 551 U.S. 89 (2007), the Supreme Court ruled on a case with somewhat similar facts as the instant case.  Mr. Erickson alleged violations of the Eighth Amendment after hepatitis C treatment was denied.  *Id.*  Based on prison protocol, Department of Corrections officials had diagnosed Mr. Erickson as requiring treatment for hepatitis C, and Mr. Erickson began treatment for the disease.   The treatment included weekly self-injections.  *Id.*  After prison officials were unable to locate a syringe used by Mr. Erickson, they determined that he was likely using the syringe for drug use, and discontinued his treatment.  *Id.*  Mr. Erickson brought suit claiming that the failure to treat him for hepatitis C regardless of protocol indicating he required treatment violated the Eighth Amendment.  *Id.*

Mr. Erickson's claim was recommended for dismissal by a magistrate judge for failing to sufficiently allege substantial harm, and the district judge dismissed the claim.  *Id.* at 92.  The 10th Circuit affirmed, but the Supreme Court vacated the ruling and remanded. *Id.* at 94-95.  The Supreme Court found that Mr. Erikson's allegations showed that he was denied treatment for hepatitis C, he was in need of treatment for the disease, and the lack of treatment endangered his life.   These allegations, taken as true, did not fail to demonstrate substantial harm.  *Id.* at 94.

The Court is mindful that the facts in the instant case are different in some aspects (Erikson was initially given treatment and subsequently had treatment taken away, while Plaintiff has apparently been denied treatment altogether), but the Court does find that *Erickson* put Defendants on notice that failure to treat a prisoner for hepatitis C in defiance of prison protocol could lead to an Eighth Amendment violation.  Plaintiff contends that prison protocol required a liver biopsy due to abnormally high liver enzyme levels, and that he was denied the biopsy by Defendant Allred.  *Third Am. Compl.* [#36] at 30.

In *Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999), Mr. Hunt, a prisoner with diabetes, alleged that he had been prescribed insulin by a prison doctor, but other doctors denied him access to insulin.  *Id.* at 1223.  Mr. Hunt alleged that other medically-recommended procedures were not performed.  *Id.*  The district court dismissed Mr. Hunt's Eighth Amendment claim for failure to state a claim for relief.  *Id.* at 1222.  On appeal, the 10th Circuit held "[p]rison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody.  This is true whether the indifference is manifested by prison doctors responding to the prisoner's needs or by guards' intentionally delaying or denying access to medical care that has been prescribed."  *Id.* at 1224.

The Court finds that *Hunt* put Defendants on notice that prison officials are at risk of violating the Eighth Amendment if they do not provide treatment in accordance with prison doctor recommendations.  Plaintiff alleges that a doctor recommended a liver biopsy due to the results of a diagnostic test, and that Defendant Allred did not provide the biopsy in accordance with that recommendation.

Taking all of Plaintiff's facts as true, a reasonable person in the official's position

would have known that it was unacceptable to ignore Plaintiff's symptoms and condition. Plaintiff was known to have hepatitis C, a test indicated that he was having liver issues, and he was complaining about symptoms often related to hepatitis C.   Under these circumstances, a reasonable prison medical official would know that it would be a constitutional violation to fail to treat a prisoner with hepatitis C when a doctor opined that additional testing was necessary.

Taking all of Plaintiff's allegations as true, as I must, he has sufficiently alleged that the conduct of Defendant Allred violated constitutional rights that were clearly established, and a reasonable person in Defendant Allred's position would have known that the rights were established.   Defendant Allred is not entitled to qualified immunity.

Accordingly, the *Motion* [#40] is **denied** in regard to Claim Two against Defendant Allred.

### 2.      Defendants Berkebile and Hall

The same deficiencies that doomed Plaintiff's claims against Defendant Berkebile and Defendant Hall in Claim One are present in this claim.   In order to survive the motion to dismiss, Plaintiff must allege that Defendants Berkebile and Hall personally participated in the conduct that led to a constitutional violation.   Plaintiff is unable to do so, and only alleges that he informed them of his medical condition.   *Third Am. Compl.* [#36] at 34. Just as these allegations failed to demonstrate deliberate indifference in Claim One, they do not show deliberate indifference in Claim Two.

Accordingly, Plaintiff's Claim Two in regards to Defendants Berkebile and Hall is **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

### IV.  Conclusion

For the foregoing reasons, the Motion [#40] is **GRANTED in part and DENIED in part.**  The remaining claim in this case is an Eighth Amendment claim against Defendant Allred for denial of a liver biopsy.


Dated: September 18, 2015                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge